Ms. Payton, please proceed. Good morning, Your Honors, and may it please the Court. Do you agree independent Claim 1 of 978 is representative of the claims on appeal? I do, to the extent that we're focused on the open area limitations and the open pathway limitations, Your Honor. All of the independent claims have those characteristics in common, and they are the focus of this appeal today. Okay. On pages 40 and 41 of the Blue Brief, Anova argues that the Board failed to engage in claim construction before determining whether the characteristics of the open passageway and open area are found in the prior art, and then you provide what you say are proper constructions for each term. Where in the record did Anova ask for those claim constructions before the Board? Your Honor, Anova did not ask for those constructions below. However, it became clear from the Board opinion that a construction would be helpful to the party interpreting the claims. When it was clear from the Board decision below that the Board failed to engage with the intrinsic record, the claim language itself and its structure, the written description and the prosecution history, to understand what those terms meant in light of the specification. Under the broadest reasonable interpretation standard, the Court is not supposed to, or the Board is not supposed to look at those claims in isolation. It's supposed to evaluate them in light of the intrinsic record. So that intrinsic record, and in particular, the information about the calculation of the outer portion of the flexible mount when it's in position, that is something that provided specific information about what the applicant meant when they described the term open area. Therefore, that's why we're presenting these claim constructions to this Court. The Board is welcome if it feels that claim construction is appropriate to request that. The parties are welcome to request it. It just became clear upon review of the Board's decision, it failed to appreciate what those two terms meant. But you agree, you didn't raise it below. I do, Your Honor. It was not clear at that time that construction would have been helpful to the prior effect. Did you file a petition for rehearing? We didn't, Your Honor. Given the nature of the Board's decision and the deficiencies, we felt it was better to come to this Court to have the Court review the evidence and the record and determine that substantial evidence did not support the decision below. In a claim construction, I understand your position. That would be one way to make sure you preserve it, but I'm not seeing a tremendous difference between what the Board's claim constructions were and what you're asking for on appeal. That's a second issue. So I think that the only difference between your construction and an open passageway on appeal and the construction that the Board provided is you say it should be an acoustic passageway. Do I understand that correctly? That that's the only difference between what you're asking for and how the Board interpreted the term? In effect, Your Honor, yes, because really this is about understanding the purpose of that passageway in light of the specification. So when you look at how the Court applied its implicit construction, it was clear that it was looking at vents, which are designed to let air move out of the inner ear area and to the outside area to preclude occlusion and pressure buildup behind the ear. It was equating that to the ANOVA device, which has this open passageway that's designed to allow natural air and natural sounds past the case into the ear so that it could mix with the augmented sound and then hit the eardrum. That's a significant difference. What about Brown? I'm just talking about this, you know, Brown talks about acoustical energy and acoustical energy, isn't that the same thing as sound? Acoustical energy becomes sound if it's in the right location. But when it talks about acoustical energy, it's pushing, it's talking about releasing through the valves that acoustic energy buildup that's behind the ear or in that open space between the front of that device, that's an in-the-ear device with an obstruction in front of the case, and then it has a clasp that goes around that connects it to the outside of the ear wall. And again, that's a compartmentalized space, right? And there's also pressure that builds up or acoustical energy that builds up behind the ear. So that is why Brown talks about allowing for release of acoustical energy buildup to the outer area of the ear. Do I understand correctly that that acoustical energy is, it's when you have the ears plugged and the sound is coming from the mouth, I guess, through the bones to the ear in that passageway, and that's the acoustical energy that they're talking about, it's still sound. You're talking about the occlusion effect, Your Honor? I'm talking about Brown and saying that it has the vents in order to allow that to dissipate. That's correct, Your Honor. There's a number of situations in which that acoustical energy buildup would occur when you have a sealed device like Brown. One instance is if you're getting on a plane and you have a sudden pressure change, right, that will change the pressure in your ear canal. You may need to allow that to escape. Likewise, whenever you have a sealed device like Brown and you are speaking, there are sound waves that are moving through the bone to the ear, and they sit there and can interfere with the microphone effort to take the outside sound and move it directly to the inner ear. So there are a number of ways in which this unwanted acoustical energy can be generated and get trapped within the device, pieces, or behind the device, and this is why all of the prior art in the ear or completely in the canal devices have a vent to allow for that passage of the unwanted acoustical energy. So it doesn't interfere with the microphone, and you don't have this uncomfortable pressure buildup in the ear. Your Honors, with respect to the claim construction, even if we put that aside for a second, it's really to help the party looking at the language of the patent claims and applying it to the prior art. It is not a significant distinction in any manner from the specifications teachings. It just makes clear that when we're talking about the ANOVA device, the important difference between the ANOVA device and the prior art that was in the ear or completely in the canal is that it does exactly what they don't teach. They say, seal the device. Do not allow this occlusion. This is a problem with a seal device, so we're going to allow small vents for air to come out. What the board did, it equated that with movement of natural sound through the open passageway in the ANOVA device. Where in your claim do you say that open sound should be coming through the open passageway and the open ear? I don't see in the claim one at least where the claim is talking about particular sound or that it has to be sound from outside the ear that's coming in, in addition to the sound that's being picked up by the microphone in the case. So Your Honor, when you look at claim one, it talks about an open passageway for movement, an acoustic passageway, and then a flexible insert defining an open area that's mounted within the Eater's Canal to create a sound path extending through the at least one open passageway in said open area. So the sound path is what we're talking about, a way for air to move from outside the ear through the device, past the case, which has spaces around it on all sides, and past the open area on the flexible mounting insert. But it doesn't say past. Sorry to interrupt you. It just says to create a sound path extending through the at least one open passageway in the open area. It doesn't say a sound path that extends past and outside the ear, for example. It does not specifically in the claim, but when you look at the entirety of the specification, it makes clear what that sound path is designed for. And remember, we're talking about the broadest reasonable interpretation of the claims in light of the specification. When you look at the abstract, the summary of the invention, the detailed description of the invention, in all of these locations, as described in the opening brief and reflected in the summary in the opening brief, the ANOVA device is designed for the purpose of allowing that natural sound into and past the device and mixed with the sound coming from the receiver. So that makes it clear that this is what the open passageway is designed for. And to read it any other way would be improper, particularly in light of the prior art, where the prior art talks about the disadvantageous nature of natural sound coming into the ear. The importance of sealing the device. What about this limitation, the 5 to 70% limitation? At one point in the board's opinion, it says it doesn't say what it's 5 to 70% of. So you know, they say, so really it doesn't have any meaning at all. Do you know what, are you familiar with what I'm referring to? So what is your position on that? I noticed that that was not raised on appeal. But I was wondering what your position was. Actually, Your Honor, that was raised on appeal and it was raised below. When we're talking about that 5 to 70%, as provided in the appendix, page 486, there was a description during prosecution of what that 5 to 70% of open area is meant to encompass. And it was compared to the SHANEEB device. The SHANEEB device has a, it's a closed in the canal device. And it has 1.9% at the most generous calculation. So if you want to put it differently during prosecution, as a matter of prosecution history estoppel, the applicant actually described what it means by that open area at the outer portion of the insert. And it provided calculations within the record to support that. Where is that referred to in your briefing before the court? In the reply brief, I know that we discussed in detail that open area and the calculations. And again, both at page 486 in the appendix and 50501 in the appendix. So where in the reply brief do you talk about the claim construction of the 5 to 70% limitation? Or in your blue brief? It's actually page five. Of the reply brief, I believe. Let me just check. I'm not seeing it here. Let me get it for you, Your Honor. And I believe it was also in the opening brief. I'll find it for you, Your Honor. Are you dropping the reference to the reply brief? I am not, Your Honor. But I believe, actually, 486 was cited in the opening brief as well. Yes, Your Honor. On page 46 and 47 of the opening brief, there was a description of the open area calculation. And it talks about the calculations I just walked through with Your Honor in terms of the 5 to 70%. So this is where we argue that when you look at these prior art devices and events, even in the most generous calculation of the prior art devices, they do not overlap with the percentage of open area that's described and claimed in the ANOVA patent. They talk about routine optimization or experimentation to get there. But there's nothing within the record that actually points to how one of ordinary skill in the art would decide that you take a closed in-the-canal device that's sealed and borrow pieces from a behind-the-ear device that may or may not have a receiver within the ear to come up with an open device to allow natural sound waves through. Ms. Payton, you're into your rebuttal time. Do you want to save the remainder? I will save the remainder. Thank you, Your Honor. Let's hear from the government. Is it Solwart? Yes, it is. Mr. Solwart, please proceed. May it please the court, the only limitations that are in dispute before the court today are the open passageway and open area limitations. And as Judge Wallach already noted, those can be considered just in light of Claim 1 because those are common to all the claims that are being disputed. So what the claim requires is that there's a sound path created that has two parts, an open passageway and an open area. Before you get into the merits, did you or are you making any arguments related to waiver? Do you believe that, and did you argue to us that the appellant waived claim construction arguments? We are making a light waiver argument, Your Honor, which is to say that we know that there were no specific claim constructions argued to the board below, and certainly not the claim. Your opponent concedes that. Yes, that's correct. And so the board's decision should be read in light of that, that these specific arguments weren't raised with a chance for the board to address them. That's not a dispute waiver? Some of the arguments raised about the merits of Brown and the other prior art references obviously implicate those terms. And so the board looked at them with their plain and ordinary meaning. And so the board's opinion should be construed or looked at by this court favorably in that light Did you argue to us that they waived this issue? We did say in the summary of the argument, Your Honor, in the blue brief, I mean, I'm sorry, the red brief, that the board addressed the arguments that were before it. And it can't have been expected to address arguments now being raised before this court for the first time. That's the only place where you address and make any waiver argument? That's correct. Because ultimately, this court is, whether it's under plain and ordinary meaning or not, is going to do some form of review of the claim construction question. And so ultimately, it has to reach that. The question is, how much of these new constructions should be given credit or looked at as part of that consideration of what plain and ordinary meaning of these terms is? Ultimately, I don't think it matters a whole lot. Because as has already been raised, the new constructions don't really add anything. I don't think that Inova has raised a persuasive argument before this court that these new constructions add something that would result in reversal in any case. Can I ask you something? This is a different issue. One of the things that troubles me about this case is how the government seems to have changed its position a lot. So you've got a rejection by the examiner that is Brown in view of various other references, the Bauman 086, Brown, Fretz, Bauman 086, Bauman 076. And there were some other references that were cited, the admitted prior art. And then you get to the board. And the board says, mostly it's just we're going to reject this in view of Brown, and says that the 5% to 70% limitation doesn't have any meaning. And then says, assuming it does, Bauman teaches that you would want to optimize this parameter for the open areas. And then says, and also there's all this other stuff here that teaches other examples of having open areas. And then you go to the red brief. And now we're talking and focusing mostly on the admitted prior art as being the primary reference. Why is it that there's all this variation for something that allegedly is obvious? Why is it that there's so many different permutations here in the record on what the actual rejection is? And it makes it really hard for me to review this. Yes, respectfully, Your Honor, I don't think that there have been a lot of different permutations. I think that the emphasis on different pieces of prior art has changed in light of the arguments at each stage of the prosecution. But the board did reject the claims over the same combinations that were argued by the examiner. I know, but then what is the reason for modifying Brown, which has open areas, in view of these prior art references, including Bauman 086, Bauman 076, and Fretz? What is the motivation for modifying a totally in-the-ear device to have components of a device that's only partly in the ear? Correct, Your Honor. I mean, especially when Brown doesn't even look necessarily like it needed to be modified. So that's the problem. But anyway, what is the motivation? OK, Your Honor. So I'll take that step by step and break it down. So the board's starting point is sort of looking at Brown and Sauer as the primary references that have a completely in-canal device disclosed that is smaller than the ear canal. And so it has to be mounted and held in the ear in some way. And they do that in slightly different ways with these flexible mounts. And in each case, the board said, looking at Brown, there's a venting system, because you have to release this pressure due to this occlusion effect that's discussed. Also, Brown talks about the problem with feedback, which it says happens even in behind-the-ear devices, which is that you have some of the amplified sound from the receiver closest to the tympanic membrane coming back around to the microphone. You've probably heard that at public events or something like that, where somebody's a little too close or far from the microphone, you get the high-pitched whistling sound. You can get that effect. That's the feedback. And so the board said, there's this known problem. And that's part of the reason that they rely on so many of the references, in particular the Bauman 086 reference for a more detailed discussion of another occlusion problem, which is occlusion loss. You're putting an object in the ear, and therefore, you're losing some of the natural resonances that are created by the architecture of the ear itself, which is another occlusion problem. And so the board says, you have a complete beam canal device, and you know about these sort of competing effects. You have occlusion from blocking it off too much. And you also have the potential for feedback. And you have to balance out those two concerns. And Brown actually recognizes those concerns and itself has a solution to them, right? That is correct. But the board also found that a person of ordinary art looking at Brown and these other prior art references would know very full and well about occlusion and feedback and look to optimize the design in Brown. Why did Brown need to be further optimized? What would make a person of ordinary skill in the art think Brown needed to be changed? Well, because they specifically discussed the occlusion effect. And many of these other references also discussed the occlusion effect. But Brown had its own solution to that. Well, it has a limited solution. And what the board is finding is that there's motivation to how outside the ear devices has a better solution than Brown's venting system. And that's what you're saying the board found? No. So as a way to go. And you're wondering why we think there's a moving target? No, Your Honor. So let me explain that you have, once you know you're motivated, that you want to optimize the design that's in Brown or also in Sauer, similar types of starting points, that you would then be motivated to go look at other disclosures, including behind the ear devices, because they are also mounting a piece of the device floating in the ear that is smaller than the ear canal, using different designs for these rubbery, sort of soft pliable mounts that hold that piece in place. And since the completely in-canal device has everything, not just that component, but it's still in a similar situation, you're still designing for that situation where you have a device smaller than the ear canal that needs to be held in place, you would look at the kind of mounts that they were using in those behind the ear devices. And so they're offering the Bowman references as yet more alternatives for how a person of skill in the art would look at these different designs that have increased open space. And then they would optimize the open space to get the maximum relief from the occlusion effect without producing any feedback. And that's consistent with the disclosure in the re-exam application. So what exactly is the motivation to combine all five of these references? It's the disclosure of both the occlusion and the feedback effects. And the note that- In the primary reference. In all. They're all being relied on, because they all this effect of occlusion and feedback. And those are countervailing concerns, because the more you open up the space in the ear around- So here's my problem. I feel like the board's opinion, for me, is troubling, because it's five references with wildly differently designed hearing aids. And I don't even understand, really, what it's picking from some of the references that it says are missing in the primary reference. I don't understand why it's motivated to go to some of those references. And I feel like there's a lot of hand-waving. And what I'm worried about with a five-reference rejection is the hindsight bias concern of just picking and choosing elements from lots of different random prior art and saying they work together. But here, it's even worse than that, because I'm not sure which elements are being chosen from some of these references. I'm not sure what some of these references even add to the primary reference that hasn't been made clear to me. So I am a little bit veiled in my understanding of the board's analysis. Right. And I am trying to convey what I think the board was saying. And I think one of the best places the board explains this is at appendix 11 to 12. And the board is saying, our starting point is brown or sour, which has the open passageway around a device that's smaller than the ear canal. And then it also has, in each case, a vent to deal with this occlusion effect. And that a person of ordinary skill in the art, looking at these other references that also just What language are you relying on? You pointed us to pages 11 and 12. Right. Beginning on the second paragraph on appendix 11, it would have been obvious to one of ordinary skill in the art, being of ordinary creativity, not an automaton, to have combined a known hearing aid with an open passageway and a flexible insert, creating a sound path through the open passageway, an open area formed by the flexible insert, i.e. brown, with the known. So wait, just to be clear, is brown then the known hearing aid that we're talking about? Yes. The known hearing aid with an open passageway and a flexible insert. That's brown? That's correct. OK. With the known feature of flexible inserts of varying dimensions, sizes, or specifications. And they're showing that any of brown frets Bauman 076 or Bauman 086, in order to address the known problem of the occlusion effect in hearing aids, any of brown frets Bauman 076 or Bauman 086. Do you think this is a combination, 103 rejection? It is a 103 rejection, Your Honor. I'm not trying to combine brown with frets Bauman and Bauman 086. It's very confusing. I think the primary references are brown and sour. And that the remaining references are being relied on for two purposes. One, to show knowledge of those of skill in the art about both occlusion and feedback problems, and that those are competing concerns. They also say any of brown, and then the others. So they're saying you can just rely on brown, but the others give you other varying solutions. Correct. But in this respect, it's sort of like relying on these pieces of prior art to show the state of the art. Multiple references demonstrating knowledge about these problems in design. And then further relying on. Is that what the examiner did? That is what the examiner did. What about the red brief? Because the red brief on page 16 is talking about the admitted prior art. If you look at page 16, for example, it says the APA shows claim one, except for space around the hearing aid. However, sour and brown show space around the hearing aid. And so the admitted prior art is what's relied on for most of the limitations of claim one. Right. But those are sort of the standard components of any hearing device that aren't really at dispute here. Don't you agree that this is a different primary reference being relied on here than what you just read to us from the board's opinion? I suppose so, Your Honor, in that respect of those sort of building block type elements, to the extent that you find that they're not disclosed specifically in brown, which does disclose completely in canal hearing device, which would not necessarily have a microphone, an acoustic passageway, and a receiver just to function as that type of device. It's sort of inherent. I thought brown wasn't completely in the ear device. I think brown is. It certainly discloses them. You could argue about whether all of the illustrations show it as completely in the canal or not. But I think it does specifically discuss them as being a part of the state of the art. Can I get you to go back to the open passageway concept, please? I'm trying to figure out what the construction of open passageway should be. Am I understanding correct? If I look at figure six, which portion is the open passageway? I'm sorry, figure six of? The patent. I'm trying to understand the construction of open passageway because that's one of the issues appealed to us, right? You told me two issues, open area and open passageway. That's correct. So look at figure six. Where's the open passageway? So in figure six, it would be sort of the open space that you can see around the case, between the case and the ear canal. Right. So I guess when it describes figure six and it talks about it as the present invention, it says, it's readily apparent that case one is smaller in cross-section than the wearer's ear canal along its entire length. Is that true about Brown? So. The answer is no. Brown is sealed on both ends with events. That's actually not correct, Your Honor, respectfully. So Brown never says it's. And try to talk in terms of what the board found, too, as opposed to what you might think now Brown discloses. OK. So the board did address the notion that. Because they referred to Brown as sealed on both ends. The board. The board did not refer to Brown as sealed on both ends. They referred to it as sealed at the location of the retaining element. But that wasn't truly sealed, because there's a vent. And so with a vent in place, there's obviously no seal. There's obviously also not a device that is smaller in cross-section than the wearer's ear canal, is there? There is in the receiver portion. And then. But that's not the entire length. This specification says, the present invention is readily apparent that case one is smaller in cross-section than the wearer's ear canal along its entire length. I don't see that in Brown. And that's what I think is the absolute clear definition of open passageway. Respectfully, Your Honor, first, that's not in claim one or any of the other claims. What isn't? That notion that the entire. The word open passageway is in claim one. It is, but it simply says an open passageway between the ear canal and the case. And yet I have to understand what open passageway means. Is there something, do you think something else in the spec is better than the definition I'm present invention? I think that claim one and the other claims are written in terms that are broader than what is disclosed in the specification. And no such requirement that the entire circumference does not touch the canal wall is included in claim one. When we say present invention, which is what that says in that sentence, how have we as a court construed that in terms of looking at definitions to give claim terms? Sometimes the court has found those statements to be limiting. I've never seen any where we haven't. Do you know of any case where we have had a sentence that defines something in terms of the present invention and then found it wasn't limiting? I couldn't give you one off the top of my head, Your Honor. Just to briefly finish addressing your point, I do believe it's fair to say that they wrote claim one broader than that to allow, for example, what if there was an open passageway only along the top of the case? Claim one seems to allow for that. They haven't written claim one in a manner to require space all around. But even if they did, I think that perhaps. But I guess that's the question of what does it mean when it says open passageway? Correct. What does it mean? Well, it means an open space. But they didn't specify that it's along the entire length of the case. But open passageway. So things have to be able to travel along that space. Yes, Your Honor. I think that's a fair. I just want to make the point that I don't think they claim that the way. But even if it's interpreted that way, Brown, the board addressed the argument about there being a seal at the outer portion of the receiver and says there's no description in Brown. And that's accurate. There's no description that that creates a seal. It's only based on looking at a two-dimensional drawing, not a three-dimensional one. And it's counter to the express disclosure of Brown about venting, which if I can just help the court with a brief reference to that. At appendix 396, column 8, higher up in column 8, there's some discussion of occlusion. And then beginning at line 24, Brown states that the sound apertures 44 provide a pathway for the rearward diffusion of this accumulated acoustical energy, as indicated by the arrows 48. Then skipping one. What figure is that with the arrows 48? That's figure 8. And then skipping one sentence, this air gap, which is described in that prior sentence farther down in the structure, combined with the sound apertures 44 provides a route of escape to the external environment for the low frequency acoustical energy responsible for the occlusion effect. It is also important to vent the ear canal to allow the dissipation of accumulated moisture within the ear canal, a possible source of damage to the receiver module. Just to be clear, that accumulated acoustical energy, that's the noise that's going through the bone from the speaker's mouth. That's right. And it results in accumulated sound pressure trapped. There's no way for it to escape. And so the vents 48 in Brown are provided to release that sound pressure. OK, so just to be clear, that's that bouncing around sound. That's not the stuff that's coming in from outside through the passageway, right? That's what this vent is there for. But it's not a valve. It's a vent. So there's nothing to prevent sounds also coming in that way, which is, you know. And furthermore, there's the disclosure in the additional references about increasing the size of this space. Sauer explicitly says, at least one vent. And it also has slots in the outer portion that open up the space even more. We noted that in the brief. But if I were to construe those vents as not creating an open passageway the entire length of the canal, if I think open passageway requires a passageway the entire length of the canal, how do I get to obviousness? Well, you can see that open passageway in Sauer, for example, because there are slots in the retaining members in addition to the vents. And remember, the open passageway doesn't mean. OK, but time out. If I construe the claim this way, don't you want me to remand this and have the board do all that? Because the board never said there are slots in Sauer that create this open passageway. Because the board, in fairness, clearly didn't construe the claim the way I'm suggesting to you I might. So wouldn't it be best if I, at that point, vacated and remanded and since there are five references, the board can kind of go through which ones may or may not support the open passageway? That's certainly an alternative, Your Honor. I just think that the board was addressing the arguments in front of it. And many of these things are apparent from just looking. But this argument was made. They absolutely repeatedly made the argument that the primary reference was sealed and therefore didn't have an open passageway. And that is explicitly addressed, that point in the board's opinion, that the argument was made that Brown has sealing at the outer portion. And the board said there's no disclosure or teaching about that as being necessary or occurring in Brown. The board just sensibly found that argument unsupported. When the vents are closed, is there an open passageway? Well, just to remind you, Your Honor, the vents are about the open area. So you have the open passageway, which is the space around the case. And the open area is the space in the retaining element. And together, those make the sound path. So if you had no vents, you would have no open area. But you could still have an open passageway. I understand. OK. Unless you want to keep going, why don't we get going? I'm well over my time. So if there are no further questions. Just a couple minutes. Yeah. Thank you. It was very helpful. Ms. Payton will give you four minutes of rebuttal time since the PTO got an extra eight minutes. I'm sure he didn't want it all, though. So we'll cut it in half and give you four. I appreciate it, Your Honor. Hopefully, I will not use all of it. Three quick points. First of all, ANOVA has an open design choice. Brown and Sauer have a closed and sealed design choice. Optimization is not doing the opposite thing with your design choice. And so I think that argument falls flat. Secondly, with respect to this thing, because of those differences, you can't say optimization is the motivation to combine. Correct, Your Honor. Correct. Optimization doesn't lead us to the opposite choice. That is explicitly described in the reference as a problematic decision in terms of the design. Secondly, Your Honor, there were many changing references, as Judge Stoll noted. Which one's the primary? Which one's not the primary? In fact, Fretz was first argued by the examiner on appeal. So this is why we are suggesting, though it's not required, that this court engage in claim construction. It has the power to do so. But given the board's confusion about the references and how it takes certain characteristics of some references and combines them with others, it's clear to us now that that is helpful. We don't need that claim construction. We think it's plain from the language of the claim and the specification of prosecution history. But it helps inform why these closed designs and the other. When you say you don't need that construction, it seems to me that the construction you're proffering is critical to your potentially getting either a vacate and remand or a reversal because the board clearly didn't construe, for example, open passage the way you think it should be construed. And we know that because of what it cited, what discloses the open passage. To be clear, we think that the claim language is clear and the specification is clear. And so there's nothing special we're asking the court to do here. But it's right, Your Honor. When you look at the way that the board below applied these claim terms, they took closed areas within a closed device and called it an open passageway. That is error. So clearly, the board did not understand what the claim and the specification meant when it talked about an open passageway for sound to come in from the outside through the device and then mix with the sound coming from the receiver. Finally, Your Honors, Sour was briefly mentioned by the government. Again, like Brown, Sour is a device with sealing elements. It's a completely in-the-canal device. It specifically talks about the sealing nature of the elements and how important it is to seal the device. Again, this is a situation where we have every single reference that we look at that's an in-the-ear or in-the-canal device. They all teach sealing. They all teach. Yes? One question about your proposed claim construction for open passageway. I see it in your blue brief at page 40, but I don't see anything in this construction that makes me think that it's along the entire ear canal. Just tell me what I'm missing. I mean. Your Honor, and you're talking about open passageway? Yeah, your proposed construction bridges pages 40 and 41. So the reason why we're not focused on the entire passageway throughout the device is because there's two open pieces here. There's the one that passes past the case, and there's another that goes through that flexible mounting device when it's actually put in the ear. That's called the open area. So the open passageway is focused on the case area, and the open area is focused on the area around the flexible mounting member when it's actually in the ear. So let's look at figure six. Do you have figure six? I do, your Honor. So really, that thing that looks like an ear plug, the space around that is the open passageway, correct? Like, where 61 is pointing, I know 61 is not technically the open passageway, but that is the passageway or not? I believe it is, your Honor. Yes, 61 is that space that's called the open passageway. Between that ear plug and the ear canal, right? Yes, your Honor. And 61, that extends all the way back, and the open area is that bubbly looking stuff that number two points to generally. I know that's not what number two is. Yes, that's right, your Honor. The open area is the outer area that contacts with the ear canal. The outer area of that flexible member. There's little holes in there. Yeah. Actually, the little holes in figure six are focused on perforations within that device. When we talk about that open area, that's where that calculation comes in, and 7E is a good example. Right, I thought the perforations were the things that made the open area. The perforations shown there, it's not clear that that's the open area, your Honor. That's actually just a depiction of a device that may have perforations. There's a number of different devices for the flexible mounting member that are described. And again, if we go back to 7E for a second, that's where there's a description of the propeller design, or 7D, the offset propeller design. What we're talking about is at that outer area near the ear canal where that flexible mounting member contacts the ear canal. That edge of the diameter, as described by the patentee during prosecution, that's the open area that we're talking about, the 5% to 7%. It's not an area close to the receiver on the inner side. It's not little holes. So there's different embodiments that you have depicted here for what the open area, how the open area is created. It could be little holes, or it could be more larger portions. It actually is not described as open holes per se. It's really described as areas near the outer diameter. So my only point is, Your Honor, it's not a vent, right? It's not a series of tiny vents. It's rather an area that provides for movement of the outside sound all the way through when it's 5% to 70%, which is significantly different than their closest device when you look at the calculations. So unless Your Honors have more questions. Thank both counsel. Case is taken under submission. Thank you.